# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| PAUL R. SIVERTSON § | |
| § | Civil Action No. 4:18-CV-169 |
| v. § | (Judge Mazzant/Judge Nowak) |
| § | |
| CITIBANK, N.A., AS TRUSTEE IN TRUST § | |
| FOR REGISTERED HOLDERS OF WAMU § | |
| ASSET-BACK CERTIFICATES WAMU § | |
| SERIES NUMBER 2007-HE2 TRUST § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On February 14, 2019, the report of the Magistrate Judge (Dkt. #77) was entered containing proposed findings of fact and recommendations that Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand be granted. Having received the report of the Magistrate Judge, having considered Plaintiff's Objections (Dkt. #89), Defendant's Response (Dkt. #91), and having conducted a de novo review, the Court is of the opinion that the Magistrate Judge's report should be adopted.

### RELEVANT BACKGROUND

The underlying facts of this case have been set forth previously; as such, the Court sets forth only those facts pertinent to Plaintiff's Objections.

Plaintiff purchased the real property located at 4008 Saharah Court, Carrollton, Texas 75010 (the "Property") in April 2004, at which time, the value of the Property was purportedly $700,000.00. Plaintiff obtained a home equity loan for $400,000.00 in mid-2005, and obtained a second home equity loan for $1,000,000.00 on December 21, 2006 (the "Loan") (Dkts. #43 at p. 9;

#50-1). According to Plaintiff, Citibank fraudulently obtained the appraisal that enabled the Loan to be made, and specifically asserts that "Citibank wanted to loan $1,000,000.00 against the [Property]. To support that loan amount, Citibank needed to have the [Property] appraised at a fair-market value of $1,250,000 or more (being. . . above the [Property's] actual fair market value)" (Dkt. #43 at p. 6). The Loan was secured by Plaintiff's execution of a "Texas Home Equity Security Instrument" (the "Security Instrument") in favor of lender Washington Mutual Bank[1] (Dkt. #50-1). Under the Security Instrument, Plaintiff was also required to execute a sworn Texas Home Equity Affidavit and Agreement regarding the Property's fair market value ("Affidavit") (Dkt. #50-2), wherein Plaintiff attested that "[t]he extension of Credit is of a principal amount that. . . does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of Credit is made" (Dkt. #50-2).

Plaintiff filed bankruptcy on November 14, 2007, and was discharged on February 22, 2008 (Dkt. #50-3). After the discharge, Plaintiff alleges that he submitted multiple loan modification applications to Defendant between 2008 and 2018 and that Defendant agreed in writing to modify the Loan (Dkt. #43 at pp. 12–15). It is undisputed that Plaintiff has failed to make his monthly mortgage payments and is currently in default under the terms of the Loan.

On June 24, 2013, Defendant filed an application to foreclose Plaintiff's Loan under Texas Rule of Civil Procedure 736 (the "Foreclosure Action"). *In re Order for Foreclosure Concerning 4008 Saharah Court, Carrollton, Texas 75010*, No. 2013-70828-431 in the 431st Judicial District Court for Denton County, Texas. Plaintiff, represented by the same counsel, brought suit against Defendant on November 6, 2013, in the 431st Judicial District Court of Denton County, seeking to contest Defendant's right to foreclose, quiet title to the Property, and raise claims for declaratory

---

[1] Washington Mutual Bank later sold the Loan to Defendant (Dkt. #43 at p. 11).

relief, breach of contract, permanent injunctive relief, and damages; on November 27, 2013, the case was removed to the Eastern District of Texas ("First Lawsuit"). *Sivertson v. Citibank N.A., as Trustee for WAMU Asset-Backed Certificates, WAMU Series Number 2007-HE2*, Cause No. 4:13-cv-710 (ECF #1). As a result, the Foreclosure Action was stayed. As the Report pointed out, Plaintiff's complaint in the First Lawsuit is virtually identical to his live complaint in the instant second lawsuit. "In both suits, Plaintiff alleges that: (1) he submitted a significant number of loan modification packages which Defendant accepted but then refused to modify the Loan; and (2) 'Defendant violated the Texas constitution by making a home equity loan to [Plaintiff] which exceeded 80% of the fair market value of the [Property]'" (Dkt. #77 at pp. 3–4) (quoting Cause No. 4:13-cv-710 (ECF #20)). The Court granted Defendant's Motion to Dismiss Second Amended Complaint and dismissed Plaintiff's First Lawsuit on March 31, 2015. Cause No. 4:13-cv-710 (ECF #36, #37).

Some three years later, Plaintiff brought the instant suit on January 19, 2018, against Defendant in the 16th Judicial District Court, Denton County, Texas, Cause No. 18-0574-16 (Dkt. #3). The case was subsequently removed to the Eastern District of Texas (Dkt. #1). Plaintiff filed his Amended Complaint subsequent to removal (Dkt. #9); Defendant thereafter filed a motion to dismiss Plaintiff's claims (Dkt. #14). Plaintiff then filed a further amended complaint, his Second Amended Complaint (Dkt. #23), which Defendant again moved to dismiss (Dkt. #27). Plaintiff moved to file his Third Amended Complaint, thereby mooting the pending dismissal motion (Dkt. #33). On August 3, 2018, Plaintiff filed his Fourth Amended Complaint, the live pleading (Dkt. #43).

By and through his Fourth Amended Complaint, Plaintiff seeks actual and exemplary damages, as well as his attorney's fees and costs, and raises claims for: (1) quiet title; (2) declaratory relief; (3) breach of contract; (4) promissory estoppel; (5) common law fraud; (6) negligent misrepresentation; (7) negligence; (8) gross negligence; (9) a contest of the right to foreclose; and (10) permanent injunctive relief (Dkt. #43). Plaintiff also alleges spoliation and various tolling doctrines (Dkt. #43 at p. 40).

On August 24, 2018, Defendant filed its Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand, seeking dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. #50). After receiving several extensions of time (Dkts. #54; #56), Plaintiff responded to the Motion to Dismiss on October 6, 2018 (Dkt. #58). On October 12, 2018, Defendant filed a Reply (Dkt. #59). On October 19, 2018, Plaintiff filed his Sur-Reply (Dkt. #60). The Magistrate Judge entered a Report and Recommendation on February 14, 2019, recommending that Defendant's Motion to Dismiss be granted, and Plaintiff's claims be dismissed (Dkt. #77). On February 21, 2019, the Court granted Plaintiff an extension of time to file objections to March 7, 2019 (Dkt. #81), and on March 8, 2019, the Court again extended Plaintiff's deadline to object to March 14, 2019 (Dkt. #86). On March 15, 2019, without explanation for his untimeliness even after numerous extensions, Plaintiff filed his Objections to the Report and Recommendation (Dkt. #89). On March 18, 2019, Defendant filed a Response (Dkt. #91).

**OBJECTIONS TO REPORT AND RECOMMENDATION**

A party who files *timely* written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3).

As an initial matter, the Court notes that even after two extensions of his deadline to object to the Report, Plaintiff still failed to file his Objections on time. As a result, the Court is not bound to consider his arguments; Plaintiff is not entitled to a *de novo* review. *Madenwald v. JPMorgan Chase Bank, N.A.*, 4:13-CV-136, 2014 WL 12576776, at *1 (E.D. Tex. July 18, 2014) ("The objections were filed late and will not be considered by the court."); *Chao v. Dars of Texas*, 4:15CV169, 2015 WL 6522818, at *1 (E.D. Tex. Oct. 27, 2015) ("Because the objections were received after [the deadline to object], Plaintiff is barred from *de novo* review by the Court."); *Penley v. Sandoval*, CIV.A. 4:04CV24, 2005 WL 3970822, at *2 (E.D. Tex. Mar. 8, 2005), *aff'd sub nom. Penley v. Collin County, Tex.*, 446 F.3d 572 (5th Cir. 2006) ("plaintiff's objections were untimely. Thus, plaintiff is not entitled to *de novo* review of the objections in relation to the pleadings and the applicable law.") (citing *Douglass v. United States Services Automobile Association,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)). Furthermore, Plaintiff's 19-page Objection is well over the page limit of 8 pages set forth in Local Rule CV-72(c). Notwithstanding this fact, the Court has considered Plaintiff's arguments and find the same to be without merit, as discussed *infra*.

The Report found that Plaintiff's claims should be dismissed under Rule 12(b)(6) because: (1) each of Plaintiff's claims, except for his claim to quiet title,[2] are barred by the applicable statute of limitations; and (2) "[e]ven assuming that Plaintiff's aforementioned claims were not time-barred, such claims must nonetheless be dismissed under Rule 12(b)(6) for failure to state a claim" (Dkt. #77 at p. 11). Plaintiff clarifies in his Objections that "[t]o simplify this case, [Plaintiff] limits the Objections to the Findings and Recommendations relating to [Plaintiff's] Suit to Quiet

---

[2] Insofar as Plaintiff objects to the Report's conclusion that his quiet title claim was time-barred (Dkt. #89 at p. 21), the Court finds that there is no such conclusion in the Report – the Report expressly carves out Plaintiff's quiet title claim from its analysis of the applicability of statute of limitations to Plaintiff's allegations (Dkt. #77 at p. 7, n. 6). Such objection is overruled.

Title, Contest of the Foreclosure, Declaratory Relief, and Claim for Injunctive Relief" (Dkt. #89 at p. 5). Accordingly, the Court adopts the Report's recommendations as to Plaintiff's claims for breach of contract, promissory estoppel, common law fraud, negligent misrepresentation, negligence, and gross negligence, finding that such claims should be dismissed with prejudice pursuant to Rule 12(b)(6). Furthermore, the Court finds that Plaintiff's claims are not precluded from dismissal by virtue of his assertion of any tolling doctrines or the "spoliation inference rule."

As to the Report's findings regarding Plaintiff's remaining claims (i.e., quiet title, contest of the foreclosure, declaratory relief, and injunctive relief), Plaintiff primarily objects: (1) the Report's findings as to these claims violate the *Erie* doctrine; and (2) the Report improperly relied upon extrinsic evidence (Dkt. #89 at p. 6). The Court considers each objection in turn.

*Violation of the Erie Doctrine*

Plaintiff "objects to each of the Findings and Recommendations relating to Sivertson's Suit to Quiet Title, Contest of the Foreclosure, Declaratory Relief, and Claim for Injunctive Relief because they violate the *Erie* doctrine" (Dkt. #89 at p. 7). Specifically, Plaintiff contends that:

> In 2014, the Dallas Court of Appeals adjudicated a nearly identical case where the lender unconstitutionally overburdened the homestead; the Dallas Court of Appeals: (1) held that the purported lien was constitutionally invalid and could not be foreclosed; and (2) granted the homeowner an award of attorney's fees; this is the loadstar [sic], controlling case (directly on point). Under the *Erie* doctrine, this Court must enforce [Plaintiff's] Constitutional rights in the same manner as the Dallas Court of Appeals.

(Dkt. #89 at pp. 7–8) (emphasis omitted) (citing *Wells Fargo Bank, N.A. v. Leath*, 425 S.W.3d 525, 528 (Tex. App.—Dallas 2014, pet. denied), *opinion supplemented on overruling of reh'g* (Mar. 21, 2014). First, the Court notes that Plaintiff wholly fails to explain why or how the Court has violated the *Erie* doctrine in light of the *Leath* opinion, failing to draw any comparisons

6

between the instant case and the circumstances present before the *Leath* court, other than blanketly stating that such a case is "directly on point."

In *Leath*, the state appellate court determined whether there was legally and factually sufficient evidence to support a jury's finding regarding the fair market value of the property at issue (amongst other findings irrelevant to the instant analysis). *Wells Fargo Bank, N.A. v. Leath*, 425 S.W.3d 525 (Tex. App.—Dallas 2014, pet. denied), *opinion supplemented on overruling of reh'g* (Mar. 21, 2014). Specifically, the *Leath* court found that considering the expert testimony and the plaintiff's testimony presented in the trial proceedings, the jury verdict related to the value of the property was supported by more than a scintilla of evidence and further, by factually sufficient evidence. *See id*. at 534–36.

The *Leath* case is inapposite to the instant case: the *Leath* court determined issues at a completely different stage of proceedings, using wholly different state law standards to make such determinations. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983); *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002). Indeed, as Defendant argues, "[b]ecause Plaintiff faces a pleading challenge, [*Leath*, 425 S.W.3d 525] does not offer Plaintiff the support he claims it does. In *Leath*, Wells Fargo challenged the sufficiency of the evidence of a jury's finding regarding the value of the property. The question before this Court is whether Plaintiff sufficiently pleaded a quiet title claim" (Dkt. #91 at p. 2). Furthermore, the circumstances before the state appellate court did not involve a sworn affidavit from the plaintiff attesting his understanding of the value of the property; in fact, the plaintiff testified that he believed the value of the property was contingent on certain repairs being completed and that he never saw the appraisal of the home prior to signing the closing documents. *Leath*, 425 S.W.3d at 536. In the instant case, Plaintiff signed an affidavit attesting to the fair market value of the Property, and

7

further swearing that such value and the amount of the Loan did not violate the Texas Constitution. The Report did not run afoul of the *Erie* doctrine in not applying the *Leath* findings to the instant case. The *Leath* case is substantively distinguishable and has no bearing on the sufficiency of Plaintiff's pleadings herein. Plaintiff's objection is overruled.

*Improper Consideration of Extrinsic Evidence*

Plaintiff next objects that the Court improperly considered extrinsic evidence, specifically the Affidavit, in deciding whether his quiet title claim and contest to the foreclosure claim should be dismissed for failure to state a claim under Rule 12(b)(6) (Dkt. #89 at p. 9). Plaintiff objects:

> Pleading that [Defendant] cannot foreclose a lien does not plead the security agreement and related affidavit as integral and central to [Plaintiff's] claims. If the security agreement and affidavit did not exist, then [Plaintiff] would still have a proper claim that [Defendant] could not foreclose his homestead for default of the home-equity loan. Similarly, pleading "The pendency of [Plaintiff's] prior bankruptcy may further entitle [Plaintiff] to relief under certain tolling, deferral, or extension precepts" does not make [Plaintiff's] bankruptcy schedules integral and central to [Plaintiff's] claims that [Defendant's] lien is constitutionally invalid and unenforceable.

(Dkt. #89 at p. 9). Plaintiff continues that because "[Plaintiff] does not refer to the extrinsic documents in the Complaint; and (ii) the extrinsic documents are not integral and central to [Plaintiff's] claims, as stated by [Plaintiff] in the Complaint," the Court could not consider the extrinsic documents in analyzing the Motion to Dismiss, and instead, should have "treat[ed] the dismissal proceeding as [a] summary-judgment proceeding" (Dkt. #89 at p. 10, 11).

As an initial matter, the Report found that Plaintiff's quiet title claim and claim to contest foreclosure[3] were insufficiently pleaded because Plaintiff's Fourth Amended Complaint "does not reference how the type of interest Plaintiff has in the property is superior to that of Defendant. Instead of providing that he is current on his mortgage payments, Plaintiff solely relies on the

---

[3] The Report set forth that Plaintiff's claims to quiet title and contest to foreclosure were substantively similar.

alleged weakness of Defendant's title to prevail on his claim" (Dkt. #77 at p. 19). Plaintiff argues in his Objections that he "purchased a fee-simple interest in the [Property] in 2004," and "has been in continuous possession of the [Property], as his primary residence, since that time," and further, "[h]is ownership rights predate and remain superior to [Defendant's] rights" (Dkt. #89 at p. 20).[4]

The majority of these allegations are not contained in Plaintiff's live pleading, and therefore, are not properly before the Court. In addition, such allegations fail to demonstrate Plaintiff's interest in the Property is superior to Defendant's interest. *Reese v. Wells Fargo Bank, N.A.*, 3:17-CV-2174-G, 2017 WL 5992406, at *5 (N.D. Tex. Dec. 4, 2017); *Hudson v. Texas W. Mortgage, LLC*, 4:15-CV-1593, 2017 WL 928134, at *4 (S.D. Tex. Mar. 9, 2017) (citing *Campo v. Bank of Am., N.A.*, No. CV H–15–1091, 2016 WL 1162199, at *5 (S.D. Tex. Mar. 24, 2016)); *Lopez v. Sovereign Bank, N.A.*, Civ. A. No. H-13-1429, 2014 WL 1315834 *5 (S.D. Tex. March 31, 2014). For this reason alone, Plaintiff's quiet title claim fails.

Even so, to Plaintiff's maintain that the Report incorrectly relied on extrinsic evidence in recommending dismissal of his quiet title claim. The Report found that:

> Plaintiff alleges that the bankruptcy schedules, the Security Instrument, and accompanying Affidavit are "irrelevant to the dismissal inquiry" and because he does not refer to these documents and because they are not integral or central to Plaintiff's claims they cannot be considered by the Court at the dismissal stage. . . .Plaintiff's home equity documents, including specifically the Security Instrument and Affidavit, bankruptcy schedules, and prior lawsuit may be properly considered by the Court. They are matters of public record and/or are referenced in Plaintiff's Complaint. Contrary to Plaintiff's assertions, his Plaintiff's Amended Complaint expressly references his bankruptcy as well as the Security Instrument, which in turn refers to the Affidavit. These records – including most importantly to this case, the Affidavit – may be properly considered by the Court without turning Defendant's Motion to Dismiss into a Motion for Summary Judgment.

---

[4] The majority of these allegations are not contained in Plaintiff's live pleading, and therefore, are not properly before the Court. "New claims and issues may not, however, be raised for the first time in objections to a Report and Recommendation." *Andrews v. United States*, 4:10-CR-152(05), 2019 WL 913873, at *1 (E.D. Tex. Feb. 22, 2019) (citing *United States v. Armstrong*, 951F.2d 626, 630 (5th Cir. 1992)); *Paup v. Texas*, 6:16-CV-417-RWS-KNM, 2017 WL 1129906, at *5 (E.D. Tex. Mar. 27, 2017).

(Dkt. #77 at pp. 19–21). Indeed, as the Report found, the Court may consider offensive extrinsic evidence without converting the Motion to Dismiss into a Motion for Summary Judgment. In taking up Defendant's Motion to Dismiss, the Court is permitted to review the live pleading, any documents attached to the live pleading, and any documents attached to the Motion to Dismiss that are central to the claim and referenced by the live pleading. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Moreover, the Court may take judicial notice of an "adjudicative fact," including other court cases. Fed. R. Evid. 201; *Thomas v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-112, 2016 WL 922182, at*3 (E.D. Tex. Feb. 12, 2016) (court could consider filings in plaintiff's state court case in analyzing the motion to dismiss as a matter of public record), *report and recommendation adopted*, No. 1:15-CV-112, 2016 WL 899870 (E.D. Tex. Mar. 8, 2016). Upon independent review, the Court finds that the Fourth Amended Complaint directly references the Security Instrument, which in turn refers to the Affidavit, and Plaintiff's bankruptcy proceedings (Dkt. #43 at pp. 10–11). The Affidavit is central to Plaintiff's claims. It is also a public record. Importantly, Plaintiff's conclusory objection fails to offer argument or authority to the contrary. As a result, the Report did not err in considering such extrinsic evidence, namely the Affidavit, in taking up the Motion to Dismiss. *See Summers v. PennyMac Corp.*, 2012 WL 5944943, at *9 (N.D. Tex. Nov. 28, 2012) (granting the motion to dismiss, after finding that "[because] the Note, Security Instrument, and Home Equity Affidavit were all part of the loan application process and necessary for approval of Plaintiffs' loan, the court believes that the Home Equity Affidavit executed by Plaintiffs falls within the scope of pleadings as described by the Fifth Circuit in Collins and therefore considers the document in deciding [defendant's] motion to dismiss."); *Reese v. Wells Fargo Bank, N.A.*, No. 3:17-CV-2174- G, 2017 WL 5944943, at *2. Because the extrinsic evidence was properly considered, there was no need

to convert the motion to dismiss into a motion for summary judgment. The Report properly considered and rejected this argument. Plaintiff's objections regarding extrinsic evidence and conversion of the motion are overruled.

*Other Objections*

As a final matter, Plaintiff raises numerous factual allegations and/or legal arguments not previously raised before the Magistrate Judge. "New claims and issues may not, however, be raised for the first time in objections to a Report and Recommendation." *Andrews v. United States*, 4:10-CR-152(05), 2019 WL 913873, at *1 (E.D. Tex. Feb. 22, 2019) (citing *United States v. Armstrong*, 951F.2d 626, 630 (5th Cir. 1992)); *Paup v. Texas*, 6:16-CV-417-RWS-KNM, 2017 WL 1129906, at *5 (E.D. Tex. Mar. 27, 2017). Plaintiff's remaining objections are overruled.

## CONCLUSION

Having considered Plaintiff's Objections (Dkt. #89), Defendant's Response (Dkt. #91), and having conducted a de novo review, the Court adopts the Magistrate Judge's report (Dkt. #77) as the findings and conclusions of the Court.

It is therefore **ORDERED** that Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand is **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.
**SIGNED this 20th day of March, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE